Mr. Falkor, Mr. Portnoy, my name is Brian Dewis. I represent Paul Lucas plaintiff appellant hearing. Mr. Lucas is present in the courtroom with us. I'd like to first address the issue of federal jurisdiction over Mr. Lucas's claims as that issue has been raised by this court. I'd like to first note that this court raised that issue for the first time, that defendant appellees have never objected to federal jurisdiction in this case. Well, don't we have a sua sponte obligation to raise it if we have a concern about whether or not we have jurisdiction? I believe that is your right, sir. So what's the basis of federal jurisdiction and where do I find it in your complaint? Our complaint alleged that the electric company on Kauai, and when I say the electric company I refer to Kauai Electric and its successor, Kauai Island Utility Cooperative, engaged in activity fixing maximum prices of solar hot water heating systems that reduced the kilowatt usage on the island of Kauai. Tom, take that back. I misspoke. They engaged in activity that reduced the maximum prices that were sold on the island of Kauai. Therefore, kilowatt usage remained high. That's a sufficient factual basis to invoke jurisdiction under the Sherman Antitrust Act 15 U.S.C. 1 and 2 because it substantially affects commerce. Wait a second. We're generating power on Kauai, right? You got a power plant of some sort probably burning fuel oil or something of that nature, right? Fuel oil. That generates electricity. Yes, your honor. Only distributed within the confines of the island. Yes, your honor. That is correct. So where's the effect on interstate commerce depending upon what the level of demand is for the electricity? Well, your honor, I think we need to remember the constitutional basis for the Sherman Antitrust Act. It's rooted in the Commerce Clause. The Commerce Clause is what tied together not only the original 13 states, continues to tie together these 50 states. This is not only intrastate generation and consumption of electricity. This is intra-island. It doesn't get much smaller than that. But your honor? And the last time I checked, the other islands were not states. So where's the effect on commerce? Well, your honor, I would have to ask you this question. Currently on the island of Kauai, they have a short list of approved contractors that qualify for their rebates. This can be seen on page 66 of the record. Paul Lucas applied to go back into the program and they told him we're limiting the number of approved contractors. So how can an outside contractor from anywhere else in the United States come and do business on the island of Kauai? That's your substantial effect on competition. Sir, this is all about installation of water heaters, right? Part of it, your honor, yes. Well, that's essentially where we are, what the complaint is about. And where are the water heaters coming from? Are they manufactured in Kauai? Some of them are and some of them are manufactured outside of Kauai. Are they manufactured in Hawaii? Some of them, yes, your honor. And some of them are not? Yes. And if you could amend the complaint to state that there were water heaters coming from outside of Hawaii that were being not going to be installed because whatever you're complaining about. Yes, I would amend the complaint to do that if required. Is that the simplest way to take care of the problem? No, I don't think it's necessary, your honor, because the case that was cited in the facsimile that was sent and in the filing that was made was McLean v. Real Estate, Ford, Inc. I'd like to quote a passage from that case for the record. That case was about a real estate broker, which is certainly a local, intrastate activity. The court in that case extended federal jurisdiction over the Sherman Antitrust Act claims for the following reason. And this is in citation 246 in that case. It said, ultimately, whatever stimulates or retards the volume of residential sales or has an impact on the purchase price affects the demand for financing and title insurance. Those two commercial activities that on this record are shown to have occurred in interstate commerce. Now, your honor, in the case of FAR, if we substitute some words, we have the same situation. Ultimately, whatever stimulates or retards the volume of kilowatt usage on the island of Kauai or has an impact on the purchase price affects the demand for oil. As shown on this record? Yes, your honor. And on this record, I can show that because in the decision and order that is relied upon by defendant Apalis, the Public Utility Commission recognized that by promoting solar on the island of Kauai, the electric company would be losing profits. They therefore allowed them to collect a surplus from each rate payer's utility bill. So they recognized that this would affect commerce, their commerce. That's all interstate commerce. And in terms of the oil, I mean, this is all, it may well be that there's oil, but maybe it's nuclear energy or maybe it's wind energy. We don't know that on this record. Do we know on this record how the electricity is being generated in Kauai? By oil. How do we know that? It seems to me much simpler to say this case is about water heaters. The water heaters are coming from outside of Hawaii or at least some of them are. But even to say that this case is about water heaters, you know, the test under the Commerce Clause where there's a substantial effect on interstate commerce, right? So as I said before, interstate commerce cannot happen on the island of Kauai because they control the whole amount of funds available to the buyers. They've created a much bigger problem we have in those cases. You never substantiate that and it doesn't even seem to be true. They control some amount of money that's used to purchase water heaters. And at least for a great deal of the time period that we're talking about, we have no idea on this record what program and how many people are buying it on their own. We have no idea. But there was a substantial effect on competition on this record. Why? Because your client had a hard time. That's all we know. All we know is your client had a hard time. They only had a hard time because the electric company was fixing a maximum price. Okay, but we have no idea that anybody else was having a hard time. Maybe he was just terribly inefficient. There's an affidavit in the record from Mark Antony, another solar contractor, who stated, I looked into the EnergyWise program and I did not participate because I realized I could not make a profit. Exactly, and he didn't have to participate because apparently it wasn't in control of the market. There were other ways he could sell his water heater. Well, Your Honor, what is happening on the ground in Kauai today? And let me please emphasize this point. Kauai Island Utility Cooperative is making a rebate available to every buyer of solar hot water heaters. They'll give them a flat $800 rebate. That means that when Paul Lucas approaches a customer and says, I can install a system for you for $5,500. Now, he is not eligible for the rebate, and the explanation Kauai Island gave him is they're only letting a certain amount of approved contractors on their list, and he's not one of them. So right now on Kauai, if a buyer saw a hot water heater, Paul Lucas quotes them $5,500 as a price. Paul Lucas' competitor can charge up to $6,200 and with the rebate still beat Paul Lucas' price. So how can he possibly compete in that environment? He has foreclosed from competing in this market, and so has any other. So what installers who are competing with each other and who are operating on the island of Kauai? We don't know how many, we don't know anything, but we know that there are at least some, seven or eight, I think, right? Eight, according to the letter on page 66. So there are eight water heater operators on the island of Kauai. So it sounds like there's pretty good competition in the water heater market in Kauai. So that being the case, what is your antitrust cause of action? Exactly. Your Honor, by only allowing these eight contractors that $800 rebate, that creates a contract in restraint of trade and a monopoly, because they control and affect this market. Outside competitors who aren't on this list, that don't have this rebate, cannot compete. They cannot make sales. Who's the monopoly? The monopoly is the buying cartel created by Kauai Island. And this is in the record, because they charge a surcharge on the buyers on the island of Kauai. So every buyer who gets an electric bill, there's a surcharge. But a cartel means a bunch of people, and you don't have a bunch of people, you have one. Could be in Mandeville. The case we cite in Mandeville, it was one. But that's not a cartel. A cartel is by definition, a group of companies joining together. Well, even if it's, the cartel that's created is the electric company and all of the residents whom they're taking money from. But even if it's, even if you just look at this as one large scale buyer, Your Honor, monopoly, mono means one, right? They control all the money they take from the electric bill on the people of Kauai. But the alleged monopolist, which I assume from your complaint, has to be the electric company, right? Yes, KE and KAUC. Okay, well, we'll just call it the electric company. Sounds good. Okay. The alleged monopolist doesn't sell water heaters. No, they don't, Your Honor. And it's not a supplier. It's not in the business. It's a buyer. Your Honor, it's a buyer. We have never alleged that they were a distributor, a The electric company takes the money from the rate payers. They then, when that homeowner goes to buy solar, the electric company gives a rebate to buy that solar. But the electric company's not buying the water heater. The customer's buying the water heater. With the assistance of the electric company. But that doesn't make the electric company a buyer. That's, I'm having a hard time understanding what your antitrust theory is. The antitrust theory is that they control, that they impact and affect competition on the island of Kauai through the exercise of their buying power, through the exercise and control. Let's assume they are a monopolist, right? For now. Okay, because your theory would be. Well, I'm just struggling. Let's suppose we got by that and we thought, well, they're sort of partial buyers. So they are a monopolist of a part of the buying market. I don't know if that would fly, but being a monopolist alone does not create a antitrust violation. You have to have a monopolist who is having a anti-competitive impact on the market, right? Yes. All right. Now we have a market in which there are, it seems to be a pretty vigorous market. It happens that your client's not in it, but there are eight. He's not in it because of the monopoly. I understand that. Okay, so what case law is there that says that if the monopolist declines to deal with one person who's in an otherwise perfectly competitive market, which is what we have to assume because we have no evidence to the contrary, that that is an antitrust violation. Okay. The case that I will cite to you, well, on page 29 of our brief, says monopoly power exists in a geographic market if one competitor has the power to raise prices to super competitive levels or has the power to exclude competition. But one competitor, it is in the sense, Your Honor, it is in the sense that they're getting the buying price they want through the use of these rebate funds. Think about what the relationship here is that if those people had, if they didn't have this surplus charged on their electric bill and this program weren't in place, they could use that money to pay Paul Lucas. But because the electric company takes that money and controls the buying process, they literally tell the customer, you can't buy from Paul Lucas. We'll help you buy solar, but you have to use one of our guys. Well, they could still buy from him, but they just don't care about the $800 rebate, right? Anybody can compete, and that's the point, Your Honor. I mean, how can you compete with that? And what's going to happen to that list of contractors? But you keep using the word compete, and the problem I'm having is that a competitor is by definition another entity that is in the same business as Mr. Lucas, i.e. either an installer of solar water heaters or a supplier of solar water heaters. And I just don't understand how you can characterize the electric company as a competitor on these facts. I mean, I'll grant you the electric company has a monopoly on supplying electricity to the residents of the island. But that's pursuant to state law, presumably. Your Honor, we're not challenging that. We've never challenged their lawfully granted monopoly to provide electrical power. We're challenging how they've abused that monopoly to foreclose competition in the solar water heating industry. That's what I'm having a hard time with. Yes, Your Honor. Back to your quotation on page 29 of your brief, okay? It defines monopoly power, right? But that doesn't answer my question, because I was willing to assume monopoly power. I want to know, assuming monopoly power, and putting aside Judge Tolman's quite legitimate concerns. Yes. That still doesn't make it an antitrust cause of action, does it? Just being a monopoly. Well, I quote- Or having monopoly power. You have to use it anti-competitively. Well, Your Honor, I- Is that not true? Yes, and I thought that I did detail this in my brief, that the requirements of the possession of monopoly power in the relevant market, which they have. Right. Willful acquisition or maintenance of that power, which they have. Okay, we're assuming that. Causal antitrust injury. Okay, what's that? The causal antitrust injury is that he's outside this trust. He's outside of these, now there's eight approved contractors- Who are apparently in a perfectly competitive market that in terms, for all the record shows, that in terms of the impact on customers are competing with each other in the prices they're charging. And it's a competitive market. It's not a non-competitive market. He happens not to be in it, but it's not that there's no competition in this market. There are eight participants on a small island. Well, exactly, a small island. And if you do not intervene in this case, you'll allow them to do whatever they want on that small island. You'll allow them to procluse anybody else but that list of contractors. If you came back with a record that demonstrated that as a result of this, there was not a competitive market for water heater installers on Kauai, then we'd have a case, but you haven't done that. Well, how much more, I mean, how much more evidence do I need than that one- Well, something about who's in their market and what the prices they're charging are and what the impact on either prices or services or something. But, Your Honor, their own experts found that Paul Lucas had lost money. But that's one company. Well, what about Mark Anthony, who didn't enter this market? And, you know, in Neville Baird, in the case that I cite in my opening brief, it says, you know, an injury to a seller is as legitimate an antitrust violation as an injury to a buyer. Now, I see that I'm down to less than two minutes, so I'd like to reserve my final time for rebuttal. Thank you. May it please the Court, my name is David Proudfoot, and I'm the counsel for Kauai Island Utility Cooperative, which is the successor to Citizens Communications Company, represented by Mr. Portnoy, who's sitting at the counsel table. I'm going to split the argument with him as necessary and reserve about five minutes for him if he thinks he needs it. With regard to the... Excuse me, Mr. Proudfoot, if there is no monopolistic practice that has been alleged, and there would then appear to be no Section 1 nor Section 2 violation of the Sherman Act, what else are you going to tell us? Nothing other than the fact that everybody blew the jurisdictional issue, myself included. Well, Judge Berzon has indicated that these water heaters, some of them probably come from off the island of Hawaii and out of the state of Hawaii, so the water heaters themselves have some interstate connection, although I don't know if that gives you an interstate connection to the alleged misconduct. And I would agree with you. There's nothing in the record that indicates it. There's nothing in the complaint that indicates that. We're talking about the solar water heaters that are sold by one individual. His allegation, I mean, in terms of just the complaint, his allegation is that the net result of all this is there aren't going to be solar water heaters sold in Kauai. That's his ultimate conspiracy theory, right? Yes. So why isn't that good enough for jurisdictional purposes? I don't think it shows in this complaint that there's a substantial effect on interstate commerce. If there were no water heaters in Kauai, that wouldn't be good enough? It depends upon what you mean by substantial. I mean, there are 40,000 homes approximately on Kauai. This is a residential hot water. That has to be good enough. I mean, it has to be, doesn't it? If you assume that it would prevent one or two component parts of a hot water system that Mr. Lucas would sell as a substantial effect on interstate commerce, then I don't know. I'm saying his allegation isn't that it's just him. His allegation is that, his conspiracy theory is that there won't be any solar water heaters on Kauai. The whole point of this is to make sure, not to promote more, but to promote less. That's his theory. I mean, it may not be terribly logical, but it's his theory. Well, I'm not sure that was alleged in the complaint. There are, in fact, as the record shows, eight other solar water heaters in the system. That was as of a year and a half ago. As of the present time, as was observed by Mr. Duis, the old system of having to get your water heater usage determined in advance has been done away with, and, in fact, the number of contractors has been opened up, but Mr. Lucas has been prevented from it, not because there aren't any more openings, but because he violated the contract. He was told that it was because there aren't any more openings. I mean, the other reason you're giving sounds like a much more logical reason, but what he was told was because they don't need any more water heater installers. And that was true at the time they were using the system. I thought that was after the change. I don't believe that timing is correct, but I could be wrong. I'm pretty sure it was. But I must say that the only thing I find at all troublesome in this record, although I don't know how it hooks up to an antitrust violation, is that, if it's so, in other words, if, in fact, there was a time period when you were saying that we are simply going to foreclose, close the number of water heater installers that were going to allow to get these rebates, what would be the reason for that? You have to go and take a look at why they had to be qualified as an installer in the first place. In order to go through the system, the EnergyWise system, to be eligible to buy a water heater where you get the rebate, you have to be sure that what is being sold to the individuals is something that meets your specifications, that the contractor is insured, and there are a bunch of regulations that are necessary in order to be sure that, in fact, what the PUC required, which was that there would be a net benefit to society by having a rebate given, and the savings from the solar water heater were substantial enough to cover the cost of the rebate. But there's no challenge here to Mr. Lucas's qualifications as an installer, is there? There were no challenges to his qualifications when he was in the program. There is a challenge to his qualifications and his veracity and his ability to – He was terminated because they had concerns about the way he did business, not his technical – Well, he was terminated for violating his contract by taking payments under the table that he acknowledged in order so he could make more money on his deal. But he's not being excluded because he's a fly-by-night solar water heater installer who doesn't know how to install a system. That's right. But more than that, the statement that was made was that we only want a certain number of water heater installers. So I still don't hear an explanation for that. And I was trying to explain. I understand that you only want competent water heater installers, but I don't understand why at some point you close the ranks. They closed the ranks, I think, for administrative purposes, that they needed to be sure that they could handle and qualify and observe and be sure that all of the installers that they had, the partners that they had in the sense of being qualified installers, were in fact able to – But it is true, is it not, with regard to the current program as opposed to the earlier one, that closing somebody out of this program is closing them out of the water heater market in Kauai. That's not true. Well, why would anybody buy a water heater in Kauai without the $800 rebate? Maybe because there was competition and it was a lower price, even with a rebate. There are installers who, in fact, exist and are not qualified under the program, and they still sell hot water heaters, solar hot water heaters on Kauai. Just different people. The question is how much profit you have to make. That's the issue, and how much profit do you want to make. That's what competition is all about. Just because you weren't making as much profit as you wanted to make and therefore you take payments under the table doesn't necessarily mean that there's some sort of anti-competitive, nefarious thing that the electric company is doing by giving its rebate program. So, I mean, I understand, yes. You know, Mr. Lucas is prescribed from getting customers who are entitled to the rebate, but that's because he violated the contract. I don't know how this hooks up to an antitrust problem, but in terms of the record, we cannot go on that theory about why he's being closed out. There is nothing. The record now demonstrates that his current closeout is because they've just closed the number of people. In other words, earlier, yes, but now he was told when he tried to come back in that we just don't want any more water heater installers, and he wasn't told it's because, and you may be telling me that something outside the record says it's really because he, of his earlier misdeeds, but the record doesn't substantiate that at this point. I think it does. The affidavit of Mr. Miurta in support of our motion for summary judgment supports that fact. He was barred because he was found to be taking. That's why he was terminated. That's right. But it's not why he's out now, because a letter was written to him saying he's out now because they're just limiting the number of water heater installers. And I will acknowledge that. Therefore, that's our premise for now. That doesn't necessarily make it into an antitrust violation. Well, that's a different problem, but I think we ought to not argue about it. I will acknowledge that. Okay. That's the state of the record I'm trying to tell you. It's not the state of the facts as it is now, but it is the state of the record, and I would say that it seems to him, I agree, unfair. That doesn't make it into an antitrust violation. What was the reason for putting a cap on the maximum amount that the installer could charge? The only reason I can give you was for administrative purposes, and the program that's being run, the way this program works is that there is a cost involved with running. Again, we're talking initially. There's no cap now. Again, listen to the question. He's talking about the earlier setting of the prices. Why was that happening? Excuse me? Setting of the prices. That's what he wanted to know. Under the previous program, why was the electrical company setting prices? I couldn't understand that either. It seems to me that the rebate would take care of it. You have an interest in what the rebate is, but why do you have an interest in what the prices charge? I think they expressed the price in percentage, didn't you? So you were going to give them a 70% rebate, and if they had a real high price, then you'd have to give them more of a rebate than you wanted to give them. No, actually, that's not it. What was it? The reason that there was a maximum price has to do with the concept of demand-side management programs as prescribed by the Public Utilities Commission of the State of Hawaii. Demand-side management programs are such that if you lower the demand for fossil-fuel-generated electricity by alternative energy programs such as solar hot water heaters, then what happens is you will have some savings. The savings are both in fuel and running your regular generators, and the savings are not having to build generation to cover that lost demand. But in order to do that, you have to make sure that the amount of rebate that you're giving will be justified by the amount of savings, and that was the whole program. There was a staff that was hired. They were hired to go out and talk to the applicant, look at their usage, look at how many people they had in the house, what appliances were hooked up to the electric system, and determine how much electricity would be saved by having that. I don't see what that has to do with putting a lid on the maximum amount that Mr. Lieber is paying. I'm trying to get to that. All right. And the reason is if you pay too much for the system, then the amount of the rebate is not – the amount that you pay for a system is too great in relationship to the savings. You'll never amortize the rebate that's given. So they set a cap on the cost of a particular system for a particular house, and each maximum was varied depending upon the amount of electricity that they could get done, to prove through a mathematical formula that was developed in the state of California, not by Kauai Electric or by KIUC, that, in fact, there was a net savings to society because if you pay this much for a solar heater and you give $800 or 45%, whatever it may be, rebate, you are, in fact, saving money for society by doing this. Yes, but there is a disconnect there, which is that the purpose of the program is not to save money. It's to save fuel and generation. So why – I mean, you can save the same amount of fuel and generation, theoretically, and hire – it doesn't depend on what the water heater costs. No, that's not – I'm sorry. I have not obviously explained this very well. What they're trying to do is make a net savings to society by the amount that's saved. Of money. Excuse me? Of money. Of money, that's right. I understand, and I'm saying I didn't think the purpose of the program was to save money. I thought the purpose of the program was to save fuel and electricity. The two are pretty much fungible in that regard. Why is that? Because fuel is money, and that's how they determine what savings you have to have in order to be able to justify a certain price for a system. How much fuel you save, also. What is the incremental savings for the capacity you don't have to build in order to satisfy the lost demand? Honestly, the only connection I can see is that maybe if the water heaters cost more, then people would be less likely to buy them, so they'd be less likely to save the electricity. That's the only connection I can see. Otherwise, I don't think you're making much economic sense. Well, I don't know how to explain it. All I can tell you is, and, of course, none of this is really in the record, is that, in fact, the maximum price on the particular system in order to be able to save the amount of money that's necessary by the amount of power that's generated by that system is a necessary factor. But you're not doing it that way anymore, so it must not be that necessary. Well, that's right. You asked me about the old system. I understand that, but you're not doing it that way anymore. We're not doing that anymore. That's right. I'm beginning to regret it. No, no, no. If I might say, and the one thing that is different now, in addition to that, is that we're no longer collecting the rebate from the customers. Once we had the disconnect between being able to prove that there was a net saving to society by setting the maximum price, we could no longer collect it in the rate payers, so we are not collecting that in the rates anymore. And so, in any event, my watch went off. And I, Mr. Portman, I might have some comments because it was his client that was there while the first system was in play. Okay. Thank you very much. I'll yield to him. All right. Good afternoon. I'll be very brief. I just want to respond to Judge Thompson. I think it's clear there's no claim under Section 1 and 2 of the Sherman Act, and that ends the case. If you find jurisdiction, I think there's enough to find jurisdiction, but obviously there's enough to find that there is no jurisdiction. Just lastly, because you've sat through four hours of argument this morning, I do want to cite for the record the New Bell Atlantic case, in an antitrust case in which the United States Supreme Court, after 50 years, has changed the burden on a plaintiff to survive a motion to dismiss, and I would argue a motion for summary judgment. It used to be just a mere possibility of a claim, and the United States Supreme Court has now said as of late May, plausibility. And this case didn't even reach possibility as far as Section 1 and 2, and it certainly would fail without question under the Bell Atlantic interpretation. Thank you all very much. That was a good argument. Counsel, briefly. Your Honor, briefly and verbatim, I see I'm not going to convince you that Kauai Electric should be viewed as a buyer in this case. However, the language is – I'm sorry. I told you, yes, you've convinced me that Kauai Electric should be viewed as a buyer. I don't see what difference that makes. Well – I actually do think it is a part of the buyer. And if Kauai Electric is viewed as a buyer, then in the case cited in our brief at page 17, it is true that the complaint does not allege a combination or conspiracy nor any facts from which one could be implied, but we do. Nevertheless, it does allege more than a simple unilateral refusal to deal. It alleges an offer to enter into a bilateral contract on condition that the offeree bow to terms claimed to be illegal under the antitrust laws. And that's what's happening here. Paul Lucas is being made to bow to the terms of the electric company. He was made – If the provision of the program is dictated by the state public utilities – Your Honor, that is a specious argument. I'll tell you why. There's not a word in the decision and order that allows them to set a maximum price. There's not a word in the decision and order that allows them to limit the number of approved contractors. Actually, I think I understood – perhaps I'm being too – Well, I thought I understood Mr. Proudfoot's argument. I think there is an economic argument that can be made as to why the utility would have an interest in setting a maximum price here. And if you join that with the fact that it was authorized by the state public utility commission, doesn't that give the utility or the electric company basically immunity from antitrusts? Absolutely not, Your Honor. The national policy in favor of competition is so strong that even a state grant of immunity requires the active supervision of the state. Once those policies are implemented, Your Honor – But this was all done pursuant to – The decision and order. But the way in which they implemented the decision and order under Energy Wise is completely different than what was approved by the PUC. The PUC approved the decision and order, and in the PUC, Your Honor, as to the cost-effective argument, they specifically required them to implement programs that were not cost-effective. They specifically said the cost-effectiveness should be measured – Part of the program was to look at the actual usage by each resident. Let me finish the question, Counsel, before you start answering it, because you're not going to answer my question if you don't listen. If part of the program was to actually measure the electric usage by the resident in order to determine whether or not it made economic sense to convert to a solar water heater system, what is anti-competitive about that? Your Honor, that's a disputed fact as to what the decision and order said because it did not authorize them to do a prospective evaluation of the cost-effectiveness of a measure because they couldn't. How can you measure how something is – They gave them a year in the decision and order. They said, We're going to measure this upon completed installations. And, Your Honor, let me stress one more point. The cost-effective argument suddenly disappeared when Kauai Island started offering an $800 rebate to all the customers. All of a sudden, they don't care if it's cost-effective or not anymore. You come to their door and ask for a rebate because you're putting in solar. Cost-effective went out the window. That is not a legitimate point. There are enough disputed facts in this case to remain this case for a jury. This is a case where competition is being foreclosed on the island of Kauai. If you fail to exert jurisdiction and fail to remain this case, you're giving the electric company, Carte Blanche, to conduct business the way they want to do it, to close the market to outside competitors. That violates the letter and the spirit of the Sherman Antitrust Act. Let them explain to a jury how Paul Lucas can do business on the island of Kauai under these circumstances. That's all he asked for. Thank you very much for your argument. And I thank all the lawyers for a useful argument and an interesting case. Thank you, Your Honor. Lucas v. Citizens Communications Company is submitted, and we are in recess until tomorrow morning. Thank you. All rise. Thank you.
judges: Thompson, Berzon, Tallman